**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Darrell FRAZIER, Defendant–Appellant.**

**Nos. 90–5267, 90–5268.**

United States Court of Appeals,
Sixth Circuit.

Argued May 6, 1991.

Decided June 20, 1991.

John W. Gill, Jr., U.S. Atty., Knoxville, Tenn., Steven H. Cook, Asst. U.S. Atty. (argued), Chattanooga, Tenn., for plaintiff-appellee.

Roger S. Hanson (argued), Hanson & Atzeff, Santa Ana, Cal., for defendant-appellant.

Before KENNEDY and MARTIN, Circuit Judges; and SPIEGEL, District Judge.*

KENNEDY, Circuit Judge.

The defendant, Darrell Frazier, appeals his conviction and sentence for conspiracy to distribute cocaine. On appeal the defendant claims that: (1) he was unlawfully seized when a law enforcement officer took his airline ticket; (2) the District Court erred in failing to give an accomplice instruction; and (3) the District Court erred in sentencing him under the Anti–Drug Abuse Act of 1988, which took effect during the conspiracy. Finding no merit to the defendant's arguments, we AFFIRM.

I

In September 1988, Detective Clayton Searle of the Los Angeles Police Department and Special Agent George Woessner of the Drug Enforcement Administration observed a woman purchase two airline tickets with cash at the Los Angeles International Airport. The woman, who was later identified as Tammy Thompson, acted nervously as she approached the ticket counter and purchased the tickets. After she departed the airport, they learned that she had purchased two tickets to Chattanooga, Tennessee, one for herself, and one for Ronald Wright, for $800 in cash. That evening, they set up surveillance at the gate from which the flight was to depart, and observed the defendant approaching the gate with four other individuals, including Thompson. The defendant was carrying a black nylon bag, which he handed to Thompson as they approached the gate. Detective Searle and Special Agent Woessner, who were dressed in plain clothes, approached the group, identified themselves as police officers, and asked the defendant and his companions if they could speak with them. The officers informed the defendant and the others that they were not under arrest and that they were free to go. The defendant and his companions agreed to talk with the officers.

When the officers approached, Thompson put the bag on the floor, and left it there when the group went with the officers to a seating area, fifteen feet away. Detective Searle asked Thompson and the defendant if they were flying. Thompson responded that she was flying alone, and the defendant stated that he was not flying. Detective Searle, however, observed a boarding pass in the defendant's pocket, and asked the defendant if he could see it. The defendant handed the boarding pass to Detective Searle, who noted that the ticket bore the name Ronald Wright and was for the same flight on which Thompson was to travel. When asked for identification, the defendant stated that he had none. Detective Searle then asked the defendant and the others about the black nylon bag. Each of them denied any knowledge or ownership of the bag.

Detective Searle then took the defendant and the others to an interrogation room, which was several hundred yards away. There, the defendant was advised of his rights. The defendant continued to maintain that the bag was not his and that he had no knowledge of it, and signed a form consenting to a search of the bag. Upon searching the bag, the officers found one kilogram of cocaine, and the defendant's identification. The defendant was arrested and charged in state court with possession with intent to distribute. Those state

* The Honorable S. Arthur Spiegel, District Judge, United States District Court for the Southern District of Ohio, sitting by designation.

charges were later dismissed, in light of this federal charge.

In January 1989, Detective Searle and Special Agent Woessner again observed the defendant at the Los Angeles International Airport. This time he was disembarking from a flight from Chattanooga. The officers recognized the defendant, and observed him with two women as he exited the plane. The defendant then walked ahead of the women, and stood apart from them at the baggage carousel, where he picked up one piece of luggage, but the women did not pick up any. Special Agent Woessner approached the defendant, who told Woessner that he recognized him, but that he did not have any "dope." Woessner informed the defendant that he was not under arrest and was free to leave. He asked the defendant if he was travelling with the two women, and he replied that he was not. When the women were asked if they were travelling with the defendant, however, they replied that they were. The defendant then conceded that he was travelling with the two women.

When asked whether he was carrying a large amount of cash, the defendant replied that he was, and asked one of the women to open a carry-on bag which she had in her possession. The bag contained $32,000 in cash, and several pieces of jewelry worth several thousand dollars.

The defendant was indicted on a charge of conspiracy to distribute cocaine. The indictment charged that the conspiracy began in August of 1988, and continued until May 1989. One day prior to trial, the defendant appeared in court and pled guilty, pursuant to a plea agreement under which the court could impose any sentence up to the maximum allowed by the sentencing guidelines, but without a sentence enhancement under 21 U.S.C. § 841(b). The defendant later informed the District Court, however, that he was dissatisfied with his representation, and wished to revoke his plea. The District Court accepted the revocation and set the case for trial.

Prior to trial, the United States filed a "Notice of Intent to Seek Enhanced Punishment" pursuant to 21 U.S.C. § 841(b)(1)(A). Section 841(b)(1)(A) requires a mandatory life sentence where the defendant has two prior drug convictions and is convicted of a crime involving a minimum of five kilograms.

Following a suppression hearing, the District Court denied the defendant's motion to suppress the evidence obtained from the two airport incidences. Throughout the suppression hearing and the trial the defendant continued to maintain that the bag was not his. The District Court held that the defendant was not detained until he was transported to the interrogation room, and at that time there was reasonable suspicion to support a *Terry* stop.[1] The jury found the defendant guilty. At the sentencing hearing the District Court adopted the calculations of the presentence report, and sentenced the defendant to life in prison, under 21 U.S.C. § 841(b)(1)(A). The District Court also imposed an alternative life sentence that did not rely on the Anti–Drug Abuse Act of 1988, which requires a life sentence, but instead relied on the range within the United States Sentencing Guidelines and section 841 prior to the 1988 amendment.

The defendant appeals both his conviction and his sentence.

## II

### A

The defendant argues that he was unlawfully seized when Detective Searle took his plane ticket from him, and that therefore, under the fruit of the poisonous tree doctrine, the search of the black bag was inadmissible. The defendant also argues that he was arrested without probable cause when he was taken to the interrogation room.

■ In order to decide whether the officials violated a legitimate privacy interest in searching the black bag, this Court must determine whether the defendant exhibited a subjective expectation of privacy, and whether the expectation is one that society

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

is prepared to protect. *Smith v. Maryland*, 442 U.S. 735, 741–42, 99 S.Ct. 2577, 2580–81, 61 L.Ed.2d 220 (1979). In *United States v. Tolbert*, 692 F.2d 1041 (6th Cir. 1982), this Court addressed these issues in a situation similar to that before us. In *Tolbert*, the defendant was approached by law enforcement officers at an airport. The officers identified themselves and asked to examine the defendant's ticket and identification, which the defendant permitted. She later disclaimed ownership of luggage which the officers then searched and discovered to contain cocaine. This Court held that "because, by her actions and vigorous oral disclaimers, [the defendant] affirmatively indicated that she had no interest in preserving the secrecy of the contents of the suitcase, she had no legitimate expectation of privacy therein." *Id.* at 1045. The defendant's rights were therefore not violated by the search.

■ The factual pattern involved in *Tolbert* is very like that involved in this case. The defendant's companion placed the bag on the floor when they were approached by Detective Searle and Special Agent Woessner. They left the bag on the floor when they went to a seating area nearby to converse with the officers. When Detective Searle asked about the bag, the defendant stated that it was not his. That "disclaimer constituted an abandonment that resulted in [the defendant's] lack of standing to challenge the search." *United States v. Knox*, 839 F.2d 285, 294 (6th Cir.1988). *See also United States v. Collis*, 766 F.2d 219, 222 (6th Cir.1985) ("[T]he defendant abandoned the shoulder bag and failed to establish a legitimate subjective expectation of privacy which would confer standing to raise a fourth amendment challenge to the agents' search of the bag."). By abandoning the black bag, the defendant also abandoned any legitimate privacy expectation in it.

The defendant claims, however, that the abandonment resulted from an improper seizure, and the contents are therefore inadmissible fruit of the poisonous tree. *See Tolbert*, 692 F.2d at 1045 ("an unconstitutional seizure or arrest which prompts a disclaimer of property vitiates that act"). The defendant's abandonment of the bag, however, was not the result of a seizure. When Detective Searle and Special Agent Woessner approached the group, they asked the defendant and his companions if they could ask them some questions. After the defendant denied that he was travelling, yet was observed to have a ticket in his possession, Searle asked the defendant if he could see the ticket that the defendant had in his pocket. The defendant handed over the ticket, and Officer Searle then asked the defendant whether the black bag, which had been seen in his possession, belonged to him. The defendant responded that the bag was not his and that he had never seen it.

■ We hold that because the defendant voluntarily gave the ticket to the officer, and the officer did not refuse to return the ticket to the defendant, taking the ticket did not constitute a seizure. In *United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir.1990), this Court held that "[t]he request for and examination of, an airline ticket and driver's license do not amount to a seizure under the fourth amendment." Although the ticket in *Winfrey* was for a flight which had just landed, the examination of the defendant's driver's license in *Winfrey* is similar to the examination of the defendant's ticket here. The defendant voluntarily gave his ticket to Detective Searle. At that time, he had not been seized. Whether at some point thereafter the retention of the ticket became a seizure need not be decided here. Because the defendant and his companions left the bag, walked away from it and denied knowledge of it, Officer Searle could have taken the bag at that point and searched it without taking the defendant to the interrogation room and obtaining written consent. The defendant had abandoned the bag before any seizure took place, and therefore has no standing to challenge the legality of the search of the bag.

The defendant also argues that the District Court erred in holding that the defendant was not stopped until he was actually taken to the interrogation room, and that

that was merely a stop, not an arrest. Because we hold that the defendant does not have standing to challenge the search of the bag, and that the search did not result from an illegal seizure, we need not decide that issue.

## B

■ Next, the defendant claims that the District Court erred in failing to instruct the jury about the possibility of prejudice on the part of an accomplice. Because trial counsel failed to request such an instruction, the issue is before this Court under the plain error standard. "[I]f no contemporaneous objection was made during trial to an error alleged on appeal, a reviewing court should not reverse the trial court unless there is plain error." *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir.1988).

■ Although the District Court did not give an instruction specifically concerning accomplices, the District Court did instruct the jury to consider the motive and relation each witness may have with either side of the case. The involvement of the witnesses in the conspiracy and the plea bargain entered into by one of the witnesses was brought out during the testimony and the arguments. The jury was not left, therefore, without information or instruction on the possibility that the witnesses might be influenced by their connection with the case, and that they should consider that in their deliberations.

The defendant contends, however, that because there was no evidence of the conspiracy or of the amount of drugs involved in the conspiracy other than the testimony of his co-conspirators, this case requires reversal for failure to give a specific accomplice instruction. A review of the record reveals, however, that there was evidence presented at trial beyond that of his co-conspirators. There was evidence of the two occasions on which the defendant was apprehended at the Los Angeles International Airport. On both occasions he was travelling with at least one other person, and was carrying one kilogram of cocaine as he was leaving Los Angeles on one

occasion, and a large amount of cash, as he was arriving in Los Angeles on the other. There was, therefore, significant evidence of his involvement in a conspiracy to distribute cocaine, even without the testimony of his co-conspirators.

"Plain error is defined as an egregious error, one that directly leads to a miscarriage of justice." *Busacca*, 863 F.2d at 435. We find that it was not plain error to fail to give an accomplice instruction.

## C

On November 18, 1988, the Anti–Drug Abuse Act of 1988 (ADAA) became effective. Prior to the ADAA, a person convicted under 21 U.S.C. § 846 of conspiracy was subject to a sentence that was not to exceed the maximum punishment for the underlying offense. The maximum punishment for distribution of five kilograms or more of cocaine was life in prison. 21 U.S.C. § 841(b)(1)(A). The ADAA amended section 846 to require a person convicted of conspiracy to "be subject to the *same* penalties as those prescribed for the offense." 21 U.S.C. § 846 (emphasis added). The ADAA also amended section 841(b)(1)(A) to include a sentence enhancement that calls for a mandatory life sentence for defendants who have two prior drug felony convictions, and are convicted of crimes involving more than five kilograms of cocaine.

The defendant raises two issues in his claim that the District Court improperly used the sentence enhancement provision. First, he claims that the amount of cocaine involved in the conspiracy prior to the enactment of section 841(b)(1)(A) was considered for the enhancement in violation of the *ex post facto* clause, and that therefore there was insufficient evidence to support the enhancement. Second, the defendant claims that the prosecutor did not properly notify him of the prosecutor's intent to seek an enhancement of punishment under 21 U.S.C. § 841(b)(1)(A) until after he withdrew his guilty plea pursuant to a plea bargain. He claims, therefore, that his sentence should be vacated.

At least some of the cocaine involved in the conspiracy was transported, and therefore the conspiracy itself continued, after the effective date of November 18, 1988. The sentence enhancement of the ADAA requires life in prison where at least five kilograms are involved and the defendant has two prior felony drug convictions. The issue, therefore, is whether the amount transported prior to the effective date may be considered for the purpose of sentence enhancement. This Court has held that a person convicted of conspiracy may be sentenced under an amended statute that increases the sentence if the conspiracy continued after the effective date. "Where, as in this case, a crime is still being carried on and continued after the date when the Act became effective, a statute imposing a greater penalty for conspiracy does not violate the *ex post facto* clause." *United States v. Henson,* 848 F.2d 1374, 1385 (6th Cir.1988) (fine enhancement under the Criminal Fine Enforcement Act applied to conspiracy that continued after the effective date). *See also United States v. Pace,* 898 F.2d 1218, 1238 (7th Cir.1990) ("A statute increasing the penalty for conspiracy does not violate the ex post facto clause when applied to a conspiracy begun before the increase that continued on after the increase.").

This case however, is distinguishable from the typical case that applies a new statute to a conspiracy conviction. The defendant does not argue that the new section 846, which requires that a conspiracy conviction "be subject to the same penalties as those prescribed for the offense," should not apply. Instead, he argues that only the amount of cocaine involved after the effective date can be used to determine whether he is required to serve a life sentence under the new section 841(b)(1)(A), which prescribes the sentence for the underlying offense.

■ There was sufficient evidence that the conspiracy of which the defendant was convicted involved more than five kilograms of cocaine. The defendant alleges that only part of that cocaine was involved after the effective date. Logic dictates that the defendant cannot escape from a sentence that considers the total amount of cocaine involved as a whole. Whether that sentence is according to the old or the amended section 841(b)(1)(A), he cannot escape the fact that the conspiracy involved more than five kilograms. We need not decide whether the District Court was required to impose a life sentence, or whether it merely had the discretion to do so. In sentencing, the District Court applied section 841(b)(1)(A) as it was amended by the ADAA, and also imposed an alternative life sentence according to the discretion permitted under that section prior to the ADAA, which provided for a term of imprisonment of no less than ten years, and no more than life. Therefore, under either the old or the amended statute, the defendant was properly sentenced to life in prison. The District Court did not err in sentencing the defendant to life.

■ Finally, the defendant suggests that there was prosecutorial misconduct in the failure of the prosecutor to notify him of the possibility of sentence enhancement. However, the plea agreement from which the defendant withdrew contained a clause in which the prosecutor agreed to refrain from seeking an enhancement of the sentence under section 841(b)(1)(A). This was notice to the defendant of the possibility of sentence enhancement. The defendant contends that he did not understand the possibility of enhancement, at least partially due to his attorney's failure to advise him of the possibility of a life sentence. The defendant also claims that his attorney failed to make certain objections at trial, and that he therefore received ineffective assistance of counsel in violation of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). It is well settled in this Circuit, however, that ineffective assistance of counsel claims are best brought in a subsequent case pursuant to 28 U.S.C. § 2255, rather than on direct appeal so that a record may be developed on that issue. *United States v. Swidan,* 888 F.2d 1076, 1081 (6th Cir.1989). We therefore decline to consider the issues of whether the defendant received ineffective assistance of counsel due to his attor-

ney's alleged failure to inform him of the possibility of enhancement and to make objections at trial.

### III

We accordingly AFFIRM the defendant's conviction and sentence.