78 F.3d 585
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William CARR and Donnell Simpson, Defendants-Appellants.
 Nos. 94-2415, 94-2420.
 United States Court of Appeals, Sixth Circuit.
 March 6, 1996.
 
 Before: ENGEL and MILBURN, Circuit Judges; and WEBER, District Judge.*
 PER CURIAM.
 
 
 1
 In this consolidated appeal, defendants appeal their convictions and sentences for conspiracy to possess with intent to distribute and possession with intent to distribute cocaine base under 21 U.S.C. §§ 841(a)(1) & 846 and 18 U.S.C. § 2. On appeal, the issues are (1) whether the federal prosecution was a "sham prosecution" in violation of the Fifth Amendment prohibition against double jeopardy, (2) whether defendants were deprived of the effective assistance of counsel at the trial, (3) whether defendant Simpson was vindictively prosecuted in violation of his due process rights, (4) whether defendants' Fifth Amendment and due process rights were violated by comments made by the district court and the prosecution to the jury, (5) whether defendants' sentences under the "100 to 1" quantity ratio violated their due process and equal protection rights, and (6) whether the district court erred in denying defendants' motions for a judgment of acquittal. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On May 31, 1993, a confidential informant to the Detroit Police Department approached the house located at 22051 Pickford Street in Detroit, Michigan and tried unsuccessfully to purchase cocaine. Although the informant observed cocaine on the premises, he was not allowed to make a purchase. On the following day at approximately 5:15 p.m., a team of six Detroit police officers arrived at the house in a police raid van with a search warrant, knocked on the door, and announced its presence. After this announcement, the officers heard movement inside the house, pried open the outer steel grate to the door, and rammed open the door. Upon entering the house, the officers saw defendants Donnell Simpson and William Carr run out of the kitchen. Each defendant ran into a separate bedroom where he was arrested.
 
 
 3
 A search of the house on Pickford Street revealed an O'Haus scale used to measure gram-sized quantities and twenty baggies, each containing either one or one-half ounces of crack cocaine (totalling 144.58 grams), lying on the kitchen counter. In other parts of the house, the officers retrieved empty baggies with cocaine residue, razor blades with cocaine residue, a brown "Vision" glass cooking pot with cocaine residue, and large plastic bags containing chunks of raw cocaine.
 
 
 4
 In the living room of the house, the police found two cardboard framed photographs that were similar to the type given out at nightclubs. One was a picture of defendant Simpson with a few other men, and the other was a picture of both defendants with several other persons. In one of the pictures, there was a man who resembled the person from whom the informant had tried to buy drugs at the house. The house contained very little furnishings or signs of residential life. One bedroom only contained a mattress, while the other only contained a blanket. In the living room, there was a television on a small table. In the kitchen there were the utensils for making crack, a stove, and a refrigerator with one can of soft drink inside. The kitchen cabinets did not have any supplies or utensils in them.
 
 
 5
 Both defendants were arrested and charged in state court on June 1, 1992, with possession of between 225 and 650 grams of cocaine in violation of M.C.L.A. § 333.7403(2)(a)(ii). Trial was set for April 5, 1993, but defendant Simpson's state attorney failed to appear. Therefore, defendant Carr was tried alone. At the close of the prosecution's case, defendant Carr moved for a directed verdict of acquittal. The state court granted that motion and dismissed the indictment, holding that mere presence in the vicinity of cocaine does not raise an issue of fact as to possession.
 
 
 6
 Following defendant Carr's acquittal, the prosecutor voiced his displeasure with the ruling and his intention to appeal. However, no appeal was made. Instead, defendants were prosecuted at the federal level.
 
 B.
 
 7
 On August 10, 1993, a federal grand jury indicted defendants Carr and Simpson on three counts. Count one charged defendants with conspiracy to possess with intent to distribute and to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) & 846. Count two charged defendants with possession with intent to distribute cocaine base and aiding and abetting that offense in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count three charged defendants with possession with intent to distribute cocaine and aiding and abetting that offense in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.
 
 
 8
 The federal prosecutor and the state prosecutor had once worked together. The federal jury trial in the district court was nearly identical to the state trial with the exceptions that Simpson was present as a defendant, the O'Haus scale had been lost, and the Vision cooking pot had been broken. After the close of the prosecution's case, defendants moved for a judgment of acquittal which was denied. On August 1, 1994, defendants were convicted of counts one and two but acquitted on count three.
 
 
 9
 On November 28, 1994, defendant Carr was sentenced by the district court to concurrent terms of 168 months on each count plus a five year term of supervised release. Also on that date, defendant Simpson was sentenced to concurrent terms of 240 months on each count plus a ten year term of supervised release. These timely appeals followed.
 
 II.
 A.
 
 10
 Defendants argue that their federal prosecution was a "sham prosecution" in violation of the Fifth Amendment prohibition against double jeopardy. However, both defendants concede in their briefs that they did not raise an objection to the federal prosecution on this ground.[1] Pursuant to Federal Rule of Criminal Procedure ("Fed.R.Crim.P.") 52(b), we review issues not raised at the trial for plain error only. United States v. Pierce, 62 F.3d 818, 831 (6th Cir.1995). As set forth in United States v. Olano, 113 S.Ct. 1770 (1993), there are four criteria to be used in determining whether to grant a remedy under Fed.R.Civ.P. 52(b). First, there must have been an error. Id. at 1777. Second, the error must have been plain or obvious. Id. Third, the error must have affected substantial rights. Id. at 1777-78. Fourth, the plain error doctrine requires us to determine if the error below " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.' " Id. at 1779 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)).
 
 
 11
 Fed.R.Crim.P. 12 requires defendants to raise any defenses or objections to the indictment prior to trial to avoid waiving those defenses and objections. See United States v. Oldfield, 859 F.2d 392, 396 (6th Cir.1988). Since defendants did not raise their double jeopardy claim until appeal, they have waived the claim, and we review for plain error only. In order for defendants to have a valid "sham prosecution" claim, they must prove that the federal prosecution was a tool or a "sham and a cover" for the state prosecution. Bartkus v. Illinois, 359 U.S. 121, 123-24 (1959). Defendants present no evidence approaching this burden of proof and primarily rely on their own suspicions and conjecture to back up this claim. Furthermore, a jury was never empaneled in defendant Simpson's case, and, thus, jeopardy never attached as to Simpson. United States v. Martin Linen Supply Co., 430 U.S. 564, 569 (1977). Accordingly, no plain error occurred in defendants' federal prosecution, and we will not reverse their convictions on this basis.
 
 B.
 
 12
 Defendants argue that they were deprived of the effective assistance of counsel at their trial in violation of their Sixth Amendment rights. Neither defendant raised this claim before the district court. "As a general rule, we will not review an ineffective assistance of counsel claim raised for the first time on appeal." United States v. Daniel, 956 F.2d 540, 543 (6th Cir.1992). See also United States v. Sanchez, 928 F.2d 1450, 1458 (6th Cir.1991); United States v. Swidan, 888 F.2d 1076, 1081 (6th Cir.1989). When the record below has not been developed on the issue of the effective assistance of counsel, it is best to leave the review of those claims to post-conviction proceedings brought under 28 U.S.C. § 2255 in order to allow an adequate record to be developed by the parties. United States v. Frazier, 936 F.2d 262, 267 (6th Cir.1991). Therefore, because the record is not developed on this issue, we will not review defendants' claims of ineffective assistance of counsel. See United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990) (per curiam).
 
 C.
 
 13
 Defendant Simpson argues that he was vindictively prosecuted in violation of his due process rights. This claim was not presented before the district court, and we again review only for plain error. Defendant Simpson argues that the commencement of the federal prosecution after defendant Carr was acquitted in state court and after Simpson exercised his right to trial was vindictive because Simpson was facing "the near certainty of an acquittal" in state court. Defendant Simpson's Brief at 27. Such a mere allegation does not prove that the federal prosecution "was motivated by a desire to punish him for something that the law plainly allowed him to do." United States v. Goodwin, 457 U.S. 368, 384 (1982). Accordingly, there is no plain error in allowing Simpson to be prosecuted in federal court.
 
 D.
 
 14
 Defendants argue that their Fifth Amendment and due process rights were violated by comments made by the district court and by the prosecution to the jury. Once again, defendants did not object to any of these statements at the trial and have waived review except for plain error.
 
 
 15
 Defendants argue that the district court improperly instructed the jury by referring to defendants' failure to testify as their "right against self-incrimination" and by stating that defendants had failed to put on any evidence despite the fact that defendants cross-examined the prosecution's witnesses. However, when these statements are viewed in their context, they reveal an effort by the district court to explain to the jury that they should not draw adverse inferences from the fact that defendants rested their case immediately after the close of the prosecution's case. See United States v. Nelson, 27 F.3d 199, 202 (6th Cir.1994) (stating that " 'the instruction must be viewed in its entirety, and a misstatement in one part of the charge does not require reversal if elsewhere in the instruction the correct information is conveyed to the jury in a clear and concise manner' ") (quoting United States v. Pope, 561 F.2d 663, 670 (6th Cir.1977). As it is questionable whether the district court made erroneous statements in the first place, certainly those statements do not amount to plain error as no miscarriage of justice occurred.
 
 
 16
 Defendants also argue that statements made during the prosecution's closing argument asserting that a portion of the prosecution's evidence was undisputed compound the harm from the statements made by the district court to amount to a violation of defendants' Fifth Amendment and due process rights. However, when the prosecution's statements are viewed in their context, it is apparent that those statements were justifiably made and did not harm defendants. Certainly, the statements did not result in a plain error. Accordingly, we reject defendants' arguments regarding the statements of the district court and the prosecution.
 
 E.
 
 17
 Defendants argue that their sentences under the "100 to 1" quantity ratio of 21 U.S.C. § 841(b) violated their due process and equal protection rights. Defendants also failed to make any objection in the district court regarding this issue. Thus, we review for plain error.
 
 
 18
 Defendants argue that treating cocaine base as equal to 100 times the same cocaine amount for sentencing purposes under 21 U.S.C. § 841(b) has no rational basis and violates their due process and equal protection rights because they are disproportionately affected as young black males by receiving harsher sentences. Defendants also cite to the report from the U.S. Sentencing Commission which recommends eliminating the 100 to 1 ratio. However, because defendants have waited until appeal to raise this sentencing issue, they have waived it. United States v. Nagi, 947 F.2d 211, 213 (6th Cir.1991), cert. denied, 504 U.S. 958 (1992). Furthermore, we conclude that plain error did not occur in defendants' sentences because this court has repeatedly upheld the validity of the 100 to 1 ratio. United States v. Lloyd, 10 F.3d 1197, 1220 (6th Cir.1993), cert. denied, 114 S.Ct. 1569, and cert. denied 114 S.Ct. 2172, and cert. denied 115 S.Ct. 219 (1994). Accordingly, we will not alter defendants' sentences.
 
 F.
 
 19
 Defendants argue that the district court erred in denying their Fed.R.Crim.P. 29 motions for a judgment of acquittal. We employ a de novo standard of review when evaluating a district court's denial of a motion to acquit. United States v. Gibson, 896 F.2d 206, 209 (6th Cir.1990). In reviewing the denial of a Fed.R.Crim.P. 29 motion, we, like the district court, evaluate all the evidence and the inferences therefrom in a light most favorable to the prosecution. United States v. Overmyer, 867 F.2d 937, 938 (6th Cir.1989), and cert. denied, 493 U.S. 813 (1989). The granting of a motion for acquittal "will be confined to cases where the prosecution's failure is clear." Burks v. United States, 437 U.S. 1, 17 (1978). The essential question we must answer is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Wholly circumstantial evidence can be enough to support a verdict if it is substantial and competent evidence. United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984), cert. denied, 498 U.S. 822 (1990). Moreover, circumstantial evidence need not "remove every reasonable hypothesis except that of guilt." Id.
 
 
 20
 Defendants argue that their convictions were supported by insufficient evidence because the only evidence presented by the prosecution was insufficient to establish anything more than their close proximity to the drugs and an association with the possible seller of the drugs. While it is true that mere presence or proximity to drugs is insufficient to establish guilt, United States v. Pena, 983 F.2d 71, 73 (6th Cir.1993), the facts in this case demonstrate additional inferences of guilt not confined to mere presence. In ruling on defendants' Fed.R.Crim.P. 29 motion, the district court noted a number of facts that could combine to form sufficient evidence of guilt beyond a reasonable doubt. First, the district court noted the fact that the house seemed uninhabited and that the defendants were present in the house with a large quantity of cocaine. Second, the district court found that a jury could conclude that the house was a stash house or weight house. Finally, the district court stated that the pictures of defendants in the deserted home and with an individual who matched the description of the alleged seller of drugs could combine with other facts to reasonably convince a jury of defendants' guilt.
 
 
 21
 To convict a person of possession with intent to distribute, the government must show that a defendant "(1) knowingly; (2) possessed a controlled substance; (3) with intent to distribute." United States v. Peters, 15 F.3d 540, 544 (6th Cir.), cert. denied, 115 S.Ct. 219 (1994). Possession can be actual, constructive, exclusive, or joint. United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.), cert. denied, 414 U.S. 866 (1973). Constructive possession can exist when a person "knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." Id.
 
 
 22
 To convict a person of conspiracy to distribute, the government must prove that a defendant "knew of the conspiracy, and that he knowingly and voluntarily joined it." United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986). Once a conspiracy is proven to exist " '[t]he connection of the defendant to the conspiracy need only be slight, if there is sufficient evidence to establish that connection beyond a reasonable doubt.' " Id. (quoting United States v. Batimana, 623 F.2d 1366, 1368 (9th Cir.), cert. denied, 449 U.S. 1038 (1980)). A defendant only needs to know of the purpose of the conspiracy and associate with the conspiracy with the intent of furthering that purpose. United States v. Hitow, 889 F.2d 1573, 1577 (6th Cir.1989). A tacit or material understanding between the parties is enough to establish that a conspiracy existed. United States v. Hughes, 891 F.2d 597, 601 (6th Cir.1989).
 
 
 23
 In United States v. Forrest, 17 F.3d 916 (6th Cir.1994) (per curiam), cert. denied, 114 S.Ct. 2115 (1994), we held that the government presented sufficient evidence for the jury to find the defendant guilty of drug conspiracy. In so holding, some of the facts which informed that decision were that the drugs found in the house were in quantities too large for individual consumption, a photograph of the defendant was in the house, and the defendant attempted to flee. Id. at 919. These same facts exist in the present case. In United States v. Lindsey, 47 F.3d 440, 445 (D.C.Cir.1995), cert. granted and judgment vacated sub. nom. on other grounds, Robinson v. United States, 64 U.S.L.W. 3415 (1995), the court held that a vacant apartment suggesting the use of the apartment solely as a drug processing and distribution center, and the drugs and drug paraphernalia setting in plain view were facts that could establish a sufficient basis for convicting the defendant. Similarly, in the present case, the vacant nature of the house and the large quantity of cocaine and drug processing utensils setting out in the kitchen can combine to form sufficient evidence to convict the defendants of conspiracy and possession.
 
 
 24
 Defendants argue that our decision in United States v. Pearce, 912 F.2d 159 (6th Cir.1990), cert. denied, 498 U.S. 1093 (1991), compels the conclusion that there was insufficient evidence in the present case. In Pearce, we held that the government presented insufficient evidence of a conspiracy on the part of the defendants to possess and distribute cocaine and instead presented a case relying on mere presence or association of the defendants with a crack house and no evidence of an agreement to distribute drugs. Id. at 162. The crucial distinction between Pearce and the present case is that in Pearce the drugs in the home were hidden and not in plain view and were not in a large quantity. While mere presence or association alone is not sufficient evidence to survive a Fed.R.Crim.P. 29 motion, the surrounding circumstances indicate that the district court was correct in the present case in choosing to deny defendants' Fed.R.Crim.P. 29 motion for judgment of acquittal. Accordingly, we shall not reverse that decision.
 
 III.
 
 25
 For the reasons stated, the judgments of the district court are AFFIRMED in all respects.
 
 
 
 [1]
 The Honorable Herman J. Weber, District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Defendant Carr did raise a double jeopardy claim, but he withdrew it because his counsel concluded that the dual sovereignty doctrine precluded its application. See J.A. 334-35