**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Tony PETERS, Defendant–Appellant.**

**No. 98–3282.**

United States Court of Appeals,
Sixth Circuit.

Argued: Aug. 27, 1999

Decided and Filed: Oct. 6, 1999

Spiros P. Cocoves (argued and briefed), Toledo, Ohio, Tony Peters (argued), pro se, Fairton, New Jersey, for Appellant.

Thomas O. Secor (argued and briefed), OFFICE OF THE U.S. ATTORNEY, WESTERN DIVISION, Toledo, Ohio, for Appellee.

Before: KEITH, CONTIE, and NORRIS, Circuit Judges.

## OPINION

CONTIE, Circuit Judge.

Defendant-appellant, Tony Peters, appeals his conviction for possession with intent to distribute heroin. For the following reasons, we affirm.

### I.

On February 21, 1997, three agents of the Drug Enforcement Administration ("DEA") in Toledo, Ohio were assigned to work drug interdiction at the Amtrak Railroad Station. At approximately 8 a.m., the team observed passengers disembarking from a train that had traveled to Toledo from New York. At about 9 a.m., members of the team observed the defendant herein leaving the train, carrying a distinctive black attache case tucked underneath his arm. Although it was a cloudy day, defendant was wearing sunglasses.

The surveillance continued and the team observed defendant enter the train station, go directly to a pay phone, and make a telephone call. While making the call, defendant looked around the train station as if he were conducting countersurveillance. After defendant finished making the call, he went out of the train terminal and boarded a bus whose destination was Detroit, Michigan. Before seating himself, defendant was observed placing the black attache case in an overhead rack on the opposite side of the bus.

One of the officers (all of whom were dressed in civilian attire) approached defendant, identified himself, and inquired whether he could speak with him. Defendant agreed, and Officer Stout requested to see his ticket. The ticket was issued in the name of Tony Morris. After observing the ticket, Officer Stout immediately returned it to defendant Peters. Officer Stout asked whether defendant Peters had any other identification, and he produced a New York Learner's Permit bearing the name Shennaike Adedayo. When Officer Stout asked defendant why he was traveling under an assumed name, he became nervous, bowed his head, and mumbled.

Officer Stout asked defendant about his destination and purpose for travel. Defendant replied that he was traveling to De-

troit to see his aunt and that he was going to stay about two weeks. However, when Officer Stout asked defendant Peters if he had any luggage, the response was no. Special Agent Ellinwood, another member of the team, witnessed this conversation. Ellinwood then removed the black attache case from the overhead rack and asked defendant Peters if he had carried the bag from the train station onto the bus. Defendant denied owning the bag, carrying it through the station to the bus, or placing it into the overhead rack.

Defendant was then asked to get off the bus momentarily for further inquiry. Special Agent Ellinwood placed the bag among the other luggage beneath the bus, and another agent, Deputy Corbett, subjected the luggage to a canine sniff. The drug-detecting canine positively alerted to the bag, and defendant Peters was placed under arrest. Shortly thereafter, a search warrant to open the bag was obtained, and the bag's contents were examined.

The agents found approximately 400 grams of pure heroin inside the bag. They also found a page from a calendar with the name of Tony Morris, the name that was on defendant's ticket, and the arrival and departure times for the train, as well as a confirmation number which matched the ticket that defendant Peters possessed.

On March 5, 1997, a federal grand jury sitting in the Northern District of Ohio returned an indictment charging defendant, Tony Peters, aka Shennaike Adedayo, with possession with intent to distribute approximately 400 grams of heroin in violation of 21 U.S.C. § 841(a)(1). After hearing evidence on the motion to suppress and other matters not subject to this appeal, the case was set for a jury trial, which began on October 28, 1997. On April 21, 1997, defendant Peters filed a motion to suppress the evidence. On June 2, 1997 and June 12, 1997, a hearing was held before a magistrate judge, who issued a report and recommendation denying the motion, which the district court adopted.

At trial, defendant testified in his own defense. He stated that he was traveling from New York to Detroit in order to purchase an automobile. He alleged that he was traveling "light," with no luggage because he planned to return the same day. He denied that he had ever carried a black attache case and maintained that the three officers who had observed him were either mistaken or lying. He stated that he used alias names because his real name was difficult to pronounce. He maintained that the calendar note containing the travel information, which was found inside the black attache case and which was government's Exhibit 4 at trial, had been found on his person when the officer searched him after his arrest.

On October 29, 1997, a jury returned a guilty verdict. On February 27, 1998, the district court sentenced defendant to a term of imprisonment of 120 months. Defendant timely filed this appeal.

## II.

We must first decide whether the district court properly denied defendant's motion to suppress the evidence found in the black attache case.

Defendant contends that the police did not have reasonable suspicion to question him and that the seizure and search of the black attache case was unconstitutional. On appeal, the United States argues that defendant does not have standing to challenge the search of the black attache case because he denied ever maintaining any custody, control, ownership, possession, or interest in the black attache case which was subjected to the search, and therefore he has no standing to object to the search.

We agree with the United States that defendant lacks standing. A person has standing to challenge the admissibility of contraband found in a suitcase or travel bag only if one has a legitimate expectation of privacy in the bag at the time of the search. *See Katz v. United States*, 389

U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A legitimate expectation of privacy incorporates two elements: first, whether defendant "exhibited an actual (subjective) expectation of privacy," and second, whether the defendant's subjective expectation is "one that society is prepared to recognize as reasonable." *United States v. Tolbert*, 692 F.2d 1041, 1044 (6th Cir.1982), *cert. denied*, 464 U.S. 933, 104 S.Ct. 337, 78 L.Ed.2d 306 (1983). "[D]efendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated." *United States v. Salvucci*, 448 U.S. 83, 85, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). This and other circuits have recognized that "[o]ne who disclaims any interest in luggage thereby disclaims any concern about whether or not the contents of the luggage remain private." *United States v. Tolbert*, 692 F.2d at 1045 (quoting *United States v. Miller*, 589 F.2d 1117, 1131 (1st Cir.1978)). Cf. *United States v. Sanders*, 719 F.2d 882, 886 (6th Cir.1983) (affirmative disclaimer required for privacy right to be lost). Thus, in the present case, this court must determine whether defendant exhibited a subjective expectation of privacy in the attache case, and whether the expectation is one that society is prepared to protect. *See Smith v. Maryland*, 442 U.S. 735, 743, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).

In *United States v. Tolbert*, this court addressed these issues in a situation similar to the one in the present case. In *Tolbert*, the defendant was approached by law enforcement officers at an airport. The officers identified themselves and asked to examine the defendant's ticket and identification, which the defendant allowed. 692 F.2d at 1043. The defendant later disclaimed ownership of the luggage, which the officers then searched and discovered cocaine. This court held in *Tolbert* that "because, by her actions and vigorous oral disclaimers, [the defendant] affirmatively indicated that she had no interest in preserving the secrecy of the contents of the suitcase, she had no legiti-

mate expectation of privacy therein." *Id.* at 1045. The court in Tolbert found that the defendant had no Fourth Amendment right to object to the search of the suitcase in which she had no legitimate expectation of privacy. *Id.* at 1044–45.

The factual scenario involved in the present case is also similar to the one involved in *United States v. Frazier*, 936 F.2d 262 (6th Cir.1991). In *Frazier*, the defendant's companion had placed a bag on the floor of the Los Angeles airport when they were approached by special agents. They left the bag on the floor when they went to a seating area nearby to converse with the officers. In *Frazier*, when one detective asked about the bag, the defendant stated that it was not his. This court held that the "disclaimer constituted an abandonment that resulted in [the defendant's] lack of standing to challenge the search." *Id.* at 265 (quoting *United States v. Knox*, 839 F.2d 285, 294 (6th Cir.1988)). *See also United States v. Collis*, 766 F.2d 219, 222 (6th Cir.) ("[T]he defendant abandoned the shoulder bag and failed to establish a legitimate subjective expectation of privacy which would confer standing to raise a fourth amendment challenge to the agents' search of the bag"), *cert. denied*, 474 U.S. 851, 106 S.Ct. 150, 88 L.Ed.2d 124 (1985). The court in *Frazier* determined that by abandoning the black bag, the defendant also abandoned any legitimate privacy expectation in regard to it. 936 F.2d at 265. A similar rationale applies in the present case. Defendant vigorously denied that the black attache case was owned by him or put on the bus by him, and thus he has no interest in preserving the secrecy of the contents of the bag and has no legitimate expectation of privacy, which would confer standing. We conclude that by voluntarily abandoning the black attache case, defendant forfeited any reasonable expectation of privacy, and, therefore, he does not have standing to challenge the search of it.

Defendant claims, however, that his abandonment of the bag resulted from an improper seizure, and the contents are therefore inadmissible fruit of the poisonous tree. *See Tolbert*, 692 F.2d at 1045 ("an unconstitutional seizure or arrest which prompts a disclaimer of property vitiates that act"). It is true that defendant's disclaimer of ownership of the bag precludes exclusion of the evidence found in it unless the abandonment was prompted by an unconstitutional seizure or arrest. *United States v. Morin*, 665 F.2d 765, 770 (5th Cir.1982).

■ The appropriate test for determining a "seizure" when one is approached by police at a public place, such as a bus terminal, was enunciated in *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980):

We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Id.* at 554, 100 S.Ct. 1870 (citations and footnote omitted). Thus, under the *Mendenhall* test, a "person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *Id.* at 553, 100 S.Ct. 1870.

■ In *Frazier*, this court found the defendant's abandonment of the bag was not the result of an unconstitutional seizure. 936 F.2d at 265. The factual scenario leading up to the seizure in *Frazier* was similar to that of the present case. In *Frazier*, two agents approached a group

and asked defendant and his companions if they could ask them some questions. After the defendant denied that he was traveling, he was observed to have a boarding pass in his possession. The agent asked the defendant if he could see his ticket, which the defendant had in his pocket. The defendant handed over the ticket, and the agent then asked the defendant whether the black bag, which had been seen in his possession, belonged to him. The defendant responded that the bag was not his and that he had never seen it. *Id.* at 263. This court held in Frazier that because the defendant voluntarily gave the ticket to the officer and the officer did not refuse to return the ticket to the defendant, taking the ticket did not constitute a seizure. *Id.* at 265. Similarly, in the present case, defendant voluntarily gave his ticket to Officer Stout, who immediately returned it to him. *See also United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990) ("[t]he request for, and examination of, an airline ticket and driver's license do not amount to a seizure under the fourth amendment"), *cert. denied*, 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991).

■ Defendant asserts that the special agents' initial encounter and subsequent conversations with him were not consensual, alleging that the police conduct surrounding the encounter caused him to believe "that he was not free to ignore the police presence or that he was free to go," because he had seen other black people searched by the same men. However, defendant did not attempt to support his motion to suppress with this evidence of coercive police activity before either the magistrate judge during the hearing on the motion to suppress or before the district court when it ruled on his motion to suppress. It is well-settled law that we will not consider an argument that has not been made before the district court. *Pinney Dock & Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988).

■ At the hearing on the motion to suppress, Special Agent Ellinwood testified that Special Agent Stout approached defendant and identified himself. At the time, both agents were dressed in civilian clothing and neither had any weapons or other police paraphernalia showing. During the encounter with defendant, Stout simply asked to see his bus ticket, train ticket, or other identification, whether he had any luggage, and his purpose for travel. The transcript of the suppression hearing indicates that the officers did not engage in any overbearing or coercive activity in making these requests and that a consensual encounter occurred. We find that there is nothing to indicate that the officers conveyed a message that compliance with their request to speak with defendant and examine his ticket was required, and no *Terry* stop occurred. As the Supreme Court stated in *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), no seizure occurs when police "ask questions of [an] individual, ask to examine the individual's identification, and request consent to search his or her luggage—as long as the officers do not convey a message that compliance with their requests is required." *Id.* at 435, 111 S.Ct. 2382 (citations omitted). See also *United States v. Frazier*, 936 F.2d at 265; *United States v. Winfrey*, 915 F.2d at 216. Because law enforcement officials may approach individuals and propose initial questions without having any reasonable suspicion of criminal activity, if the police do nothing to convey to the defendant that he is not free to leave, the encounter does not become a seizure for Fourth Amendment purposes as long as the individual consents to questioning, which the defendant herein did. Absent coercive or intimidating behavior which negates the reasonable belief that compliance is not compelled, the agent's request for additional identification and voluntarily given information from the defendant does not constitute a seizure under the Fourth Amendment. *See Florida v. Rodriguez*, 469 U.S. 1, 5, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984); *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

Although defendant states that he did not feel free to go, at the motion to suppress hearing he provided no objective evidence to support this subjective belief. Because the transcript of the hearing indicates there was no coercive activity on the part of the special agents up to the point when they asked if the suitcase belonged to him, the stop remained a consensual encounter, which does not require reasonable suspicion for Fourth Amendment purposes. It was during this consensual encounter when defendant abandoned ownership of the bag, and thus the search of the bag after a search warrant was obtained was not the result of an unconstitutional seizure. Because defendant abandoned ownership of the bag during a consensual encounter, he waived any right to a legitimate expectation of privacy therein, and defendant therefore has no standing to challenge the subsequent search of the bag. The district court's denial of the motion to suppress evidence is affirmed.

### III.

■ We must next review whether there was sufficient evidence to sustain defendant's conviction. When this court reviews a claim that the evidence was insufficient to support a conviction, this court views the evidence and all reasonable inferences in the light most favorable to the government. *United States v. Morrow*, 977 F.2d 222, 230 (6th Cir.1992), *cert. denied*, 508 U.S. 975, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993). According to the Supreme Court opinion in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), a conviction will be upheld if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Upon appeal, the court should not weigh the evidence or determine the credibility of the witnesses. *United States v. Warner*, 971 F.2d 1189, 1195 (6th Cir.1992).

Defendant argues that in the present case the jury overlooked a number of important factors in weighing the evidence, such as the absence of his fingerprints on the bag that contained the heroin, the fact that he had little cash on his person, and the statements that he voluntarily made prior to being arrested. Defendant's arguments have no merit for the following reasons.

On appeal, the reviewing court is not to weigh the evidence or determine the credibility of witnesses. *Id.* Furthermore, we must construe the evidence in the light most favorable to the government. *Morrow*, 977 F.2d at 230. In so doing, none of the things which defendant mentions are sufficient to mean that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. For example, the testimony regarding fingerprints established that although an attempt had been made to recover fingerprints from the bag, subsequent examination could not prove conclusively, one way or another, whether the fingerprints on it were defendant's. However, this does not prove that he never handled the bag, which three DEA agents observed him carrying.

Defendant's argument that because he had little cash on his person, he was not a heroin dealer also fails. It is the government's position that defendant was transporting the drugs from New York to Detroit, the final place of distribution. It is therefore logical that defendant would have been paid for the heroin once it had been ultimately delivered to the purchaser in Detroit, and there was no reason for him to have a large amount of cash on his person on his way to Detroit prior to final delivery.

Finally, in regard to defendant's statement to the jury in his defense, the jury obviously did not find him credible, and this court must not weigh the credibility of the witnesses. *Warner*, 971 F.2d at 1195. Moreover, this determination of the jury is supported by the evidence, because defendant's statements made at trial were often in direct conflict with what he said prior to his arrest. For example, he told the police that he had planned to remain in Detroit for about two weeks when he was first arrested, whereas at trial he insisted that he intended to return to New York the same day. He told the police that he had not carried the bag from the train through the station to the bus, although he had clearly been seen to do so by three DEA agents. Prior to his arrest, defendant told Officer Stout that his clothes were at his aunt's house, whereas at trial he stated that he had no clothes. The jury had the opportunity to view the three agents' testimony, observe their demeanor, and assess the reasonableness of their testimony, and compare this with the conflicting statements of defendant.

In considering the record as a whole and taking all the inferences in the light most favorable to the government, there was more than sufficient evidence to permit a rational trier of fact to find that defendant committed the offense beyond a reasonable doubt. Three DEA agents saw him place the suitcase in the rack opposite himself; they found a calendar page inside the bag with the name of Tony Morris, which was the name on defendant's ticket. The calendar page also had the arrival and departure times for the train which the agents were surveilling, as well as the confirmation number which matched the ticket that defendant Peters possessed. Therefore, there was a direct connection between the bag and defendant, and the jury found his argument that the agents planted the calendar page in the bag not credible. We must give this credibility determination of the jury its due weight. For these reasons, the district court is affirmed on this issue.

### IV.

For the above reasons, the district court is hereby **AFFIRMED**.