NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0366n.06
Filed: May 6, 2005

No. 04-5418

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| RUSSELL EWING McKINNON, | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: COLE and SUTTON, Circuit Judges; ZATKOFF, District Judge.[*]

SUTTON, Circuit Judge. Russell McKinnon pleaded guilty to being a felon in possession of a firearm on October 23, 2003. McKinnon's plea agreement reserved his right to appeal the district court's denial of his motion to suppress evidence from a January 27, 2001, patdown search, during which Officer Chad Gish discovered that McKinnon was carrying a nine-millimeter semiautomatic pistol. The district court resolved multiple credibility determinations in Officer Gish's favor. As we conclude that the district court did not commit reversible error in reaching these conclusions, we affirm.

---

[*] The Honorable Lawrence P. Zatkoff, Senior District Judge for the Eastern District of Michigan, sitting by designation.

On January 27, 2001, all parties agree, Officer Chad Gish, while on patrol with Officer Richard Martin, stopped and arrested Russell McKinnon.

According to McKinnon's recollection of the arrest, he had just been to visit his mother and had then stopped at a nearby market. After exiting the market, he saw several people on the sidewalk across the street, one of whom he knew. He walked across the street to ask for a ride and was told to wait while his acquaintance continued conversing with some people on the street. After he had waited for a few minutes, two marked police cars approached the market, turned on their sirens and stopped. McKinnon says that he started to walk away at this point, concerned that others in the area might be engaged in potential illegal activity. As he walked away, a police officer told him to stop in the following manner: "You, with the black jacket on, stop; put your hands on top of your head and walk backwards." JA 181. He turned around to see Officer Gish with his gun drawn. Feeling that he was being threatened with the use of force if he chose to leave, McKinnon complied with the officer's instructions. An immediate search revealed a pistol and Gish placed him under arrest.

According to Officer Gish's recollection of the arrest, he was engaged in "proactive patrol" of the University Court Housing Project, which he described as a high-crime area. JA 123. While conducting the patrol, Gish was in possession of a trespass waiver filed by the housing agency, which allowed him to enforce any trespassing violations on housing agency property. He saw the crowd of individuals by the market, then noticed a man who appeared to look at his police car, look away and begin to leave through housing agency property. He stopped his car, approached the

walker (who was McKinnon) and asked him, "Hey, man, can you come here talk to me for a second, you got a second?" JA 131. When McKinnon did not stop, Gish asked him a second time. McKinnon stopped, and Gish noticed, as he asked him whether he lived on the property, that he appeared nervous. He then asked McKinnon if he could pat him down. McKinnon said either that he did not mind if Gish patted him down or that Gish could do what he had to do. Gish found the pistol. Throughout the course of the encounter, Gish testified that he never unholstered his own firearm.

On July 24, 2002, a grand jury indicted McKinnon for being a felon in possession of a firearm. At a suppression hearing, the district court denied McKinnon's motion to suppress the search, finding Officer Gish's version of the facts more believable and noting that McKinnon's version of the encounter had been different in state court proceedings. Because, under Officer Gish's version of the events, the encounter and the patdown remained consensual until after Gish found the gun, the district court concluded that no Fourth Amendment violation had occurred. McKinnon then pleaded guilty on October 23, 2003, reserving his right to appeal the district court's denial of his motion to suppress evidence from the search. After the district court sentenced him to 180 months of imprisonment and 5 years of supervised release, McKinnon appealed.

Our review of the district court's credibility determination is limited to clear-error review. *See United States v. Gillis*, 358 F.3d 386, 390 (6th Cir. 2004) (applying clear-error review to a trial court's finding of fact stemming from the denial of a motion to suppress). "[W]hen there are two

permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *United States v. Ivy*, 165 F.3d 397, 401–02 (6th Cir. 1998).

The district court properly weighed the credibility of the few parties who witnessed the January 27 search and did not clearly err in determining that Officer Gish's recollection of the facts was more credible. As the district court noted, McKinnon's version of the January search in state court differed markedly from his testimony at the suppression hearing. In state court, McKinnon testified that Officer Gish, after seizing him, patted his pockets, did not find anything at first, and discovered the gun only after he had requested McKinnon's identification and handcuffed McKinnon when he discovered he was on parole. At the suppression hearing, McKinnon testified that Officer Gish searched him and found the gun immediately after stopping him. In light of this discrepancy and in light of McKinnon's demeanor during his testimony, the district court, as the finder of fact in the first instance, appropriately determined that Officer Gish's version of the events was more credible.

On the basis of this credibility determination, the district court correctly concluded that both the initial January 27 encounter and the patdown search were consensual. *See Illinois v. Lidster*, 540 U.S. 419, 425 (2004) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions."); *United States v. Matthews*, 278 F.3d 560, 562 (6th Cir. 2002) (shouting "come here" does not effect a seizure); *United States v. Waldon*, 206 F.3d 597, 603 (6th Cir. 2000) (In a consensual encounter, "law enforcement officers may approach an individual and ask general

questions without having any reasonable suspicion of criminal activity, so long as the officers refrain from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave.").

McKinnon argues that, even crediting Gish's version of events, the encounter was non-consensual, pointing to Gish's motive to be proactive and "involved in things before they happen" and to Gish's failure to elicit any information from him before the patdown. But neither Gish's motive nor Gish's decision not to ask any questions before requesting a patdown search bears on the pertinent inquiry here, which is whether a reasonable person would have believed that he could not leave the consensual encounter. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (holding that an individual's liberty is restrained "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave"); *United States v. Peters*, 194 F.3d 692, 697 (6th Cir. 1999) (factors to consider in determining whether an encounter is consensual include the threatening presence of several officers, the display of a weapon, some physical touching of one's person, or the use of language or tone of voice indicating compliance with the officer's request is compelled).

Lastly, we note that McKinnon has not made an argument for resentencing based on *United States v. Booker*, 125 S. Ct. 738 (2005), and his plea agreement presumably explains why. *See* JA 28 ("I have been advised that I will be sentenced . . . pursuant to guidelines established by the United States Sentencing Commission."); JA 36 ("[T]he defendant knowingly waives the right to appeal

the sentence imposed pursuant to this agreement."); *see also United States v. Bradley*, 400 F.3d 459

(6th Cir. 2005) (holding that pre-*Booker* plea agreements remain binding after *Booker*).


      For these reasons, we affirm.