**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rogelio GARCIA–TORRES,**
**Defendant–Appellant.**

**No. 99–5912.**

United States Court of Appeals,
Sixth Circuit.

Jan. 5, 2001.

Before SUHRHEINRICH and MOORE, Circuit Judges; EDMUNDS,* District Judge.

OPINION

MOORE, Circuit Judge.

The defendant, Rogelio Garcia–Torres, appeals the district court's denial of his motions to suppress. We conclude that the police stopped the defendant pursuant to a valid *Terry* stop, and the defendant voluntarily consented to return with the police for further questioning. The officer legitimately requested basic identification

* The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

from the defendant who then produced an obviously fake resident alien identification card. Thereafter, the officer placed the defendant under lawful arrest. We therefore AFFIRM the district court's denial of the defendant's motions to suppress.

## I.

On January 1, 1998, Officer Ronnie Richards observed the defendant and another man leave 2173 Carson Street, which was being monitored by the police for illegal drug and prostitution activity. According to Officer Richards, the men approached a vehicle that had been reported as stolen which was parked in front of the house, but after spotting the officer, the men walked away from the car. The defendant and his friend proceeded on foot to a nearby Circle K convenient store where they were stopped soon after by Officer Richards and Officer Anthony Gafford. Pat-down searches of both men revealed nothing suspicious. The officers then inquired about the stolen car and requested both men to return to 2173 Carson Street to answer additional questions. The defendant and his companion agreed to be transported by the officers to Carson Street, where the officers concluded after additional questioning that they did not have sufficient probable cause to seek a warrant for auto theft. The officers did wish, however, to complete field interview reports of this incident, which required gathering routine identification information from the defendant and his companion. As the defendant was seated in the back seat of the police car, Officer Gafford stood in the opening of the rear door and asked the defendant to produce identification. The defendant then presented a resident alien identification card which the officer suspected was forged. Officer Gafford immediately placed the defendant under arrest.

On April 29, 1998, the defendant filed motions to suppress evidence and statements, and on August 21, 1998, the district court held an evidentiary hearing. The defendant argued that his statements should be suppressed because they were made during a custodial interrogation which violated the safeguards provided by *Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and his Fifth and Sixth Amendment rights. The defendant also contended that any physical evidence seized should be suppressed as the fruit of an illegal search.

On September 21, 1998, the district court entered a Memorandum and Order denying the defendant's motions to suppress and concluded that, "(1) the Defendant was not subject to custodial interrogation; therefore, his statements were not obtained in violation of his rights under *Miranda v. Arizona;* (2) the Defendant's statements were not obtained in violation of his rights under the Fifth and Sixth Amendments; and (3) the Officer's request for identification did not violate the Defendant's Fourth Amendment right to be free from unreasonable search and seizure." Joint Appendix ("J.A.") at 11–12 (Mem.). The defendant entered a plea of guilty on January 5, 1999 to count one of the Indictment which charged him with being "an alien having previously been arrested and deported, [who] was found in the United States without, prior to his re-embarkation at a place outside the United States, the Attorney General of the United States having expressly consented to such alien's reapplying for admission," J.A. at 9 (Indictment), and reserved the right to appeal from the order denying his motions to suppress pursuant to Fed. R.Crim. P. 11(a)(2). The defendant received a sentence of seventy-seven months of imprisonment and three years of supervised release.

## II.

 When reviewing the district court's denial of a motion to suppress evidence, we "must consider the evidence in the light most favorable to the government." *United States v. Erwin,* 155 F.3d 818, 822 (6th Cir.1998) (en banc), *cert. denied,* 525 U.S. 1123, 119 S.Ct. 906, 142 L.Ed.2d 904 (1999). This court upholds factual findings by a district court on a motion to suppress unless clearly erroneous and reviews legal conclusions de novo. *See United States v. Smith,* 182 F.3d 473, 476 (6th Cir.1999). The district court's factual findings regarding the voluntariness of the defendant's statements will not be reversed unless clearly erroneous. *See United States v. Rose,* 889 F.2d 1490, 1494 (6th Cir.1989) (citing *United States v. Jones,* 846 F.2d 358, 360 (6th Cir.1988)).

### A. Legitimate *Terry* Stop

A *Terry* investigatory stop is a narrowly drawn exception to the requirement of probable cause under the Fourth Amendment and must be supported by reasonable suspicion of criminal activity. *See United States v. Richardson,* 949 F.2d 851, 856 (6th Cir.1991). This circuit has held that "reasonable suspicion can be based on a totality of circumstances no one of which standing alone would create a reasonable suspicion." *United States v. Anderson,* 923 F.2d 450, 455 (6th Cir.), *cert. denied,* 499 U.S. 980, 111 S.Ct. 1633, 113 L.Ed.2d 729 (1991). We have recognized that "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *Erwin,* 155 F.3d at 822 (quoting *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (internal quotation marks omitted)).

The scope of law enforcement activities in an investigative stop depends upon the circumstances that originally justified the stop. *See United States v. Obasa,* 15 F.3d 603, 607 (6th Cir.1994). "Thus, the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released." *Id.* (quoting *Berkemer v. McCarty,* 468 U.S. 420, 439–40, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (internal quotations omitted)). We evaluate the legitimacy of an investigatory stop by making a two-part assessment of the reasonableness of the stop. First, we determine whether there was a proper basis to stop the individual based upon the officer's "aware[ness] of specific and articulable facts which gave rise to a reasonable suspicion." *United States v. Garza,* 10 F.3d 1241, 1245 (6th Cir.1993) (quotation omitted). Second, we evaluate "whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *Id.* (quotation omitted).

 In this case, the district court properly concluded that the officers conducted a lawful *Terry* stop. With respect to the first prong of the analysis, the police indeed had articulable facts which gave rise to reasonable suspicion. The defendant had just come out of a house that was under police surveillance for drug and prostitution activity; the defendant approached a stolen car parked in front of this house; and when the defendant and his companion saw the police, they walked away from the car which made the officer

suspect that the defendant and his companion may have something to do with the stolen car. As to the second prong, the defendant's personal security was never threatened or offended by the officer's conduct. After a brief pat down which revealed no contraband or weapon, the defendant consented to return to the house on Carson Street for further questioning about the stolen car. Under the totality of the circumstances, the police performed a valid *Terry* stop which was followed by the defendant's voluntary decision to return with the police to the site of the stolen car on Carson Street.

## B. No Illegal Seizure

■ The defendant argues that his forged resident alien identification card should be suppressed because it was obtained "without a search warrant, and in the absence of probable cause and/or reasonable suspicion, and in violation of the Fourth Amendment of the United States Constitution." J.A. at 33 (Def.'s Mot. to Suppress). We disagree. "Not all encounters between the police and citizens are seizures within the meaning of the [F]ourth [A]mendment." *United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir.1990) (holding that "[t]he request for, and examination of, an airline ticket and driver's license do not amount to a seizure under the [F]ourth [A]mendment"). For instance, "no seizure occurs when police ask questions of [an] individual, ask to examine the individual's identification ... as long as the officers do not convey a message that compliance with their requests is required." *United States v. Peters*, 194 F.3d 692, 698 (6th Cir.1999) (quoting *Florida v. Bostick*, 501 U.S. 429, 435, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (internal quotation marks omitted)). As we concluded in *United States v. Peters*,

Because law enforcement officials may approach individuals and propose initial questions without having any reasonable suspicion of criminal activity, if the police do nothing to convey to the defendant that he is not free to leave, the encounter does not become a seizure for Fourth Amendment purposes *as long as the individual consents to questioning*, which the defendant herein did. Absent coercive or intimidating behavior which negates the reasonable belief that compliance is not compelled, the [officer's] request for additional identification and voluntarily given information from the defendant does not constitute a seizure under the Fourth Amendment.

*Id.* (emphasis added). Like the defendant in *Peters*, Garcia–Torres consented to return with the officers to Carson Street and consented to questioning about the stolen car. The defendant then voluntarily produced the fake identification card in response to the officer's request for identification which the officer needed to complete a field interview report.

There is no evidence in the record to indicate that the defendant's compliance with the officer's request for identification was required or compelled. To begin, the defendant never protested at any time to being in the police car. No emergency equipment such as lights, sirens, or weapons were used by the officers at any time during the transport of the defendant to Carson Street or when Officer Gafford asked the defendant for identification. Furthermore, the officer did not handcuff the defendant until after the defendant produced the fraudulent resident alien identification card. Thus, the district court correctly concluded that the defendant was not seized within the meaning of the Fourth Amendment.[1]

---

1. The district court also analyzed this case as a "consent to search," however, we decline to

## C. No "Interrogation"

■ Finally, the defendant argues that any incriminating statements should be suppressed because "[s]uch statements were made in response to custodial interrogation and were obtained involuntarily in violation of the Fifth and Sixth Amendments of the United States Constitution and the requirements of *Miranda vs. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)." J.A. at 31 (Def.'s Mot. to Suppress).[2] In *Rhode Island v. Innis*, the Supreme Court defined "interrogation" in the context of *Miranda* to "extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 302, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The Sixth Circuit in *United States v. Avery* held that routine biographical data requested during booking of a suspect did not constitute interrogation sufficient to trigger *Miranda* protections because "[t]hese questions did not relate, even tangentially, to criminal activity." *United States v. Avery*, 717 F.2d 1020, 1024 (6th Cir.1983). Although we concluded that "[o]rdinarily, however, the routine gathering of biographical data for booking purposes should not constitute interrogation under *Miranda*," *id.* at 1025, we also cautioned that factual circumstances are important to determine whether interrogation is present. "In reaching this result, we acknowledge that courts should carefully scrutinize the factual setting of each encounter of this type. Even a relatively innocuous series of questions may, in light of the factual circumstances and the susceptibility of a particular sus-

pect, be reasonably likely to elicit an incriminating response." *Id.*

■ Unlike *Avery*, this case did not involve information gathered during a booking, but rather the officer sought the defendant's identification to complete a field interview report. The principles set forth in *Avery*, however, apply to the instant case because both cases involve a legitimate request by a law enforcement officer for the purpose of obtaining routine identification from a suspect. There is no evidence in the record that Officer Gafford requested identification because he suspected that the defendant would present fake identification. Officer Gafford's request for identification was not "reasonably likely to elicit an incriminating response," *Innis*, 446 U.S. at 302, and thus the defendant was not under "interrogation" within *Miranda*. It was in response to Officer Gafford's legitimate request for identification that the defendant voluntarily produced an obviously bogus identification card, after which the officer validly placed the defendant under arrest. The district court therefore properly refused to grant the defendant's motion to suppress.

## III.

Based upon the foregoing, we AFFIRM the district court's denial of the defendant's motions to suppress.

---

make any similar analysis because it is our view that no "search" took place.

**2.** Like the district court, we too are puzzled about what statements, if any, the defendant seeks to suppress on the basis of the Fifth and Sixth Amendments. The defendant never

specified in his brief any statements he sought to be suppressed. Thus, the district court correctly denied the defendant's motion to suppress based on the Fifth and Sixth Amendments.