[Cite as *State v. Granados*, 2014-Ohio-1758.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 13-CA-50 |
| SAMUEL D. GRANADOS | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Fairfield County
                             Court of Common Pleas, Case No. 2012-
                             CR-0408

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      April 24, 2014

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

GREGG MARX                                TODD BARSTOW
Prosecuting Attorney                      538 S. Yearling Road, Ste. 202
By: Andrea K. Green                       Columbus, OH 43213
Assistant Prosecuting Attorney
239 W. Main Street, Ste. 101
Lancaster, OH 43130

*Gwin, P.J.*

{¶1} Appellant Samuel D. Granados ["Granados"] appeals his convictions and sentences after a bench trial in the Fairfield County Court of Common Pleas on one count of trafficking in heroin in violation of R.C. 2925.03 and one count of possession of heroin in violation of R.C. 2925.11(C)(6)(e).

### Facts and Procedural History

{¶2} Sergeant Hamler of the Fairfield County Sheriff's Office received a tip from a Pickerington School Resource Officer that a student had discovered several marijuana plants growing in a field on the student's route home from school. Sergeant Hamler and Deputies Campbell and Williamson went to the location identified by the student, found the marijuana plants, and approached a nearby residence to inquire as to whether the occupants were aware of the plants. The male resident of the home told the officers that the marijuana plants belonged to his adult son, James Wolfe, who currently lived with his girlfriend, Nicole Marshall, in the basement of the residence. The officers confronted Wolfe and Marshall, who admitted to cultivating the marijuana plants. Upon receiving consent from the pair to search their living area in the basement of the premises, the officers found suboxone pills. Neither Wolfe nor Marshall had a prescription for the pills. The officers told Wolfe and Marshall that they could be facing felony charges, but that the officers would be willing to work with them if they were willing to cooperate with law enforcement.

{¶3} Wolfe and Marshall told the officers that they had served as a "middleman" for a dealer named "Sammy" who had supplied them with large amounts of

heroin on over five occasions in the past. Wolfe told the officers that he had previously worked with "Sammy," a Hispanic male at the Basement Doctor.

{¶4}   Wolfe proceeded to describe the drug transactions with Granados to the officers. Wolfe related that Granados and another taller, thin, Hispanic male would always deliver the drugs to his residence in a light-colored SUV. Granados and his colleague would pull in the driveway of Wolfe's residence and wait for him to approach the vehicle where money would be exchanged for the heroin. On most of the occasions the heroin would be packaged in a DAP brand caulking tube.

{¶5}   Wolfe agreed to call the phone number they had used in the past to set up a drug transaction. Wolfe called the number. When no one answered, he left a voice mail message. After several attempts, Wolfe eventually spoke to someone. Wolfe did not recognize the voice of that person as Granados. Wolfe arranged with that individual for a delivery of heroin that evening, between 7:00 and 7:30 p.m.

{¶6}   Based upon this information, officers set up several "check points" en route to the residence in order to see if they could obtain probable cause to stop the SUV for a traffic violation. Officer Hamler stayed with Wolfe and Marshall at the residence. Officers identified an SUV matching Wolfe's description traveling in the direction of the residence, but could not identify any traffic violations for which to stop the vehicle.

{¶7}   The vehicle turned into Wolfe and Marshall's residence at approximately 7:15 p.m. When the light-colored SUV pulled into the driveway, Wolfe and Marshall confirmed that the two Hispanic men occupying the vehicle were the men they were expecting. After the vehicle idled in the driveway for 30-45 seconds, several officers

approached the vehicle with their weapons drawn and ordered the two occupants to exit the vehicle and show "us your hands" (Supp. Hrg., Feb. 28, 2013 at 151-152). The occupants of the SUV were placed on the ground and handcuffed. (Id. at 153). The driver of the vehicle was a tall, thin Hispanic male, and the passenger was a shorter Hispanic male who produced a driver's license identifying him as Granados. The driver of the automobile was unable to provide officers with proper identification.

{¶8} Officers conducted pat-down searches of the pair, and placed them into separate police cruisers. Deputy Campbell and Deputy Williamson were able to see through the SUV's window a DAP-brand caulking tube in plain view on the floor behind the driver's seat. Officers removed the DAP-brand caulking tube from the vehicle and could immediately tell that something was not right, as the tube felt hard in some places yet empty in other places. The officers then cut open the caulking tube. Inside the caulking tube was a large object encased in black electric tape. The object was later determined to be a package of heroin in powdered form, totaling 76.3 grams. Both occupants of the vehicle were arrested and charged with possession and trafficking of heroin.

{¶9} The Fairfield County Grand Jury indicted Granados on September 7, 2012 on one count of trafficking in heroin and one count of possession of heroin, both felonies of the second degree. On February 28, 2013, the trial court conducted a hearing on Granados' motion to suppress evidence. By judgment entry filed March 21, 2013, the trial court overruled that motion.

{¶10} On March 26, 2013, Granados appeared in open court and acknowledged his waiver of a jury trial. The trial court immediately commenced a bench trial. On March

27, 2013, the trial court found Granados guilty on both counts. On May 16, 2013, the trial court held a sentencing hearing. After merging the counts of conviction, the state elected sentencing on the trafficking charge. The trial court sentenced Granados to a term of six years incarceration.

### *Assignment of Errors*

{¶11} Granados raises two assignments of error,

{¶12} "I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF AGGRAVATED TRAFFICKING IN DRUGS AS THAT VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶13} "II. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

### I.

{¶14} Granados contends that his conviction is against the manifest weight of the evidence.

{¶15} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d

582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

{¶16} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶17} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983).

Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.
>
> * * *
>
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶18} In the case at bar, Granados was found guilty of trafficking in heroin and possession of heroin.

{¶19} To prove Granados guilty of trafficking in heroin, in violation of R.C. 2925.03(A)(2), the state had to prove that Granados knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed a controlled substance, knowing or having reasonable cause to believe that the controlled substance was intended for sale or resale. R.C. 2925.03(A)(2). The state also had to prove that the controlled substance was heroin, in an amount equal to or in excess of 50 grams and less than 250 grams. R.C. 2925.03(C)(6)(f).

{¶20} To prove Granados guilty of possession of heroin, in violation of R.C. 2925.11(A) and (C)(6)(e), the state was required to prove that Granados did knowingly obtain, possess or use a controlled substance. R.C. 2925.11(A). The state further alleged that Granados possessed heroin, in an amount equal to or exceeding 50 grams and less than 250 grams.

{¶21} Wolfe testified that he worked with Granados. During that time, Granados propositioned him about purchasing heroin on possibly two occasions. Wolfe's testimony described that when the heroin was delivered to him, it was always packaged in the same way, wrapped in electrical tape, and stuffed down the side of a DAP-brand caulking tube. Granados provided Wolfe with a contact number to call in order to set up heroin deals, and that in nearly all of these dealings he either spoke with Granados to set up the transaction or the heroin was delivered to him by Granados. Wolfe testified that he would always make a phone call, indicate if he wanted one or two ounces, and then someone, often Granados, would show up at his home with the heroin in a DAP-brand caulking tube. Wolfe expected two Hispanic men to deliver heroin to him on August 30, 2012 in a light-colored SUV, and that they did in fact arrive with a DAP-brand caulking tube in the vehicle.

{¶22} Marshall indicated that the heroin was meant for resale because in previous transactions she took part in cutting it apart and weighing it, and that nearly every time Wolfe called to place an order it was Granados who would bring the heroin to their residence.

{¶23} The testimony of Sergeant Hamler established that the two men and the vehicle that arrived at the residence at 7:15 p.m. matched the descriptions given to him

by Wolfe. His testimony further established that a DAP-brand caulking tube matching the description of the one that the heroin would be delivered in was in plain view in the backseat of the vehicle. Testimony was presented that the object was later determined to be a package of heroin in powdered form totaling 76.3 grams.

**{¶24}** R.C. 2925.01(K) defines possession as follows: " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2901.21 provides the requirements for criminal liability and provides that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21(D)(1).

**{¶25}** Possession may be actual or constructive. *State v. Butler*, 42 Ohio St.3d 174, 176, 538 N.E.2d 98(1989); *State v. Haynes*, 25 Ohio St.2d 264, 267 N.E.2d 787(1971); *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362(1982), syllabus. To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. *State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351(1976). Dominion and control may be proven by circumstantial evidence alone. *State v. Trembly*, 137 Ohio App.3d 134, 738 N.E.2d 93(8th Dist. 2000). Circumstantial evidence that the defendant was located in very close proximity to the contraband may show constructive possession. *State v. Butler*, supra; *State v. Barr*, 86 Ohio App.3d 227, 235, 620 N.E.2d 242, 247-248(8th Dist. 1993); *State v. Morales*, 5th Dist. Licking No. 2004 CA 68, 2005-Ohio-4714, ¶50; *State v. Moses,* 5th Dist. Stark No.

2003CA00384, 2004-Ohio-4943,¶9. Ownership of the contraband need not be established in order to find constructive possession. *State v. Smith*, 9th Dist. Summit No. 20885, 2002-Ohio-3034, ¶13, *citing State v. Mann*, 93 Ohio App.3d 301, 308, 638 N.E.2d 585(8th Dist. 1993). Furthermore, possession may be individual or joint. *Wolery*, 46 Ohio St.2d at 332, 348 N.E.2d 351. Multiple individuals may constructively possess a particular item of contraband simultaneously. *State v. Pitts*, 4th Dist. Scioto No. 99 CA 2675, 2000-Ohio-1986. The Supreme Court has held that knowledge of illegal goods on one's property is sufficient to show constructive possession. *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362, 1365(1982), certiorari denied, 459 U.S. 870, 103 S.Ct. 155, 74 L.Ed.2d 130(1982).

{¶26} If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E. 2d 492(1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, *80 Ohio St.3d 89, 684 N.E.2d 668(1997).* "Circumstantial evidence and direct evidence inherently possess the same probative value [.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d at 272, 574 N.E. 2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168,

555 N.E.2d 293(1990), citing *Hurt v. Charles J. Rogers Transp. Co*, 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, citing *Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

{¶27} In *Ulster County Court v. Allen*, 442 U. S. 140, 99 S.Ct. 2213(1979), the United States Supreme Court upheld a statute which provided that the presence in an automobile, other than a public one, of a firearm "is presumptive evidence of its possession by all persons occupying such automobile at the time except (a) where the firearm is found upon the person of an occupant, (b) where the automobile is being operated for hire by a licensed operator or (c) if the weapon is a handgun and one of the occupants, not present under duress, has a license to have a handgun." Id. at 442 U. S. 142-143, 99 S.Ct. 2217. The Court noted that the presumption was not a mandatory; rather it was a permissive inference available only in certain circumstances. Further, the jury could ignore the presumption even if there was no affirmative proof offered in rebuttal by the accused. Id. at 160-162, 99 S.Ct. at 2226-2227. Finally, the trial judge in *Allen* explained, "that possession could be actual or constructive, but that constructive possession could not exist without the intent and ability to exercise control or dominion over the weapons." Id. at 161, 99 S.Ct. at 2226.

{¶28} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Granados committed the crimes of trafficking and possession of heroin in an amount equal to or in excess of 50 grams and less than 250 grams. We hold, therefore, that the state met its burden of production regarding each element of the crime of trafficking and

possession and, accordingly, there was sufficient evidence to submit the charge to the trial judge as the trier of fact and to support Granados' convictions.

**{¶29}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard,* 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

**{¶30}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶31}** The trial judge as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the [trier of fact] may take note of the inconsistencies and resolve or discount them accordingly such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999

WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the [trier of fact] need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

{¶32} In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for

resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

A fundamental premise of our criminal trial system is that "the [trier of fact] is the lie detector." *United States v. Barnard,* 490 F.2d 907, 912 (9th Cir. 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the "part of every case [that] belongs to the [trier of fact], who [is] presumed to be fitted for it by [his] natural intelligence and their practical knowledge of men and the ways of men." *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891).

*United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267(1997).

{¶33} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541,

*quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The judge neither lost his way nor created a miscarriage of justice in convicting Granados of the charges.

**{¶34}** Based upon the foregoing and the entire record in this matter, we find Granados' convictions were not against the sufficiency or the manifest weight of the evidence. To the contrary, the judge appears to have fairly and impartially decided the matters before him. The judge as a trier of fact can reach different conclusions concerning the credibility of the testimony Wolfe and Marshall. This court will not disturb the trier of facts finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The judge heard the witnesses, evaluated the evidence, and was convinced of Granados' guilt.

**{¶35}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of each crime beyond a reasonable doubt.

**{¶36}** Granados' first assignment of error is overruled.

II.

**{¶37}** In his second assignment of error, Granados cites as error the trial court's decision to overrule his motion to suppress the evidence.

**{¶38}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v.* Burnside, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a

reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See* B*urnside,* supra, *citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist 1997); *See, generally*, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

*A. The "stop"*

**{¶39}** At the outset, we note a reviewing court is not authorized to reverse a correct judgment merely because it was reached for the wrong reason. *State v. Lozier*, 101 Ohio St.3d 161, 166, 2004-Ohio-732 at ¶46, 803 N.E.2d 770, 775(2004) (*citing State ex rel. McGinty v. Cleveland City School Dist. Bd. of Edn*. (1998), 81 Ohio St.3d 283, 290, 690 N.E.2d 1273 (1998)); *Helvering v. Gowranus*, 302 U.S. 238, 245, 58 S.Ct. 154, 158(1937).

**{¶40}** Contact between police officers and the public can be characterized in three different ways. *State v. Richardson*, 5th Dist. Stark No. 2004 CA 00205, 2005–Ohio–554, ¶23–27. The first is contact initiated by a police officer for purposes of

investigation. "[M]erely approaching an individual on the street or in another public place [,]" seeking to ask questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. *United States v. Flowers*, 909 F.2d 145, 147(6th Cir. 1990). The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *see also INS v. Delgado*, 466 U.S. 210, 212, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Bostick*, 501 U.S. at 434–435, 111 S.Ct. 2382 (citations omitted). The person approached, however, need not answer any question put to him, and may continue on his way. *Florida v. Royer*, 460 U.S. 491, 497-98, 103 S.Ct. 1319, 75 L.Ed.2d 229(1983). Moreover, he may not be detained even momentarily for his refusal to listen or answer. Id. "So long as a reasonable person would feel free 'to disregard the police and go about his business,' *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991), the encounter is consensual and no reasonable suspicion is required." *Bostick*, 501 U.S. at 434, 111 S.Ct. 2382, 115 L.Ed.2d 389.

{¶41} The second type of contact is generally referred to as "a *Terry* stop" and is predicated upon reasonable suspicion. *Richardson, supra; Flowers*, 909 F.2d at 147; *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889(1968). This temporary detention, although a seizure, does not violate the Fourth Amendment. Under the *Terry* doctrine, "certain seizures are justifiable ... if there is articulable suspicion that a person has committed or is about to commit a crime" *Florida*, 460 U.S. at 498, 103 S.Ct. 1319,

75 L.Ed.2d 229. In holding that the police officer's actions were reasonable under the Fourth Amendment, Justice Rehnquist provided the following discussion of the holding in *Terry*,

> In *Terry,* this Court recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. The Fourth Amendment does not require a police officer who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo mo-monetarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams*, 407 U.S. 143, 145–47, 92 S.Ct. 1921, 1923–24, 32 L.Ed.2d 612(1972).

**{¶42}** The third type of contact arises when an officer has "probable cause to believe a crime has been committed and the person stopped committed it." *Richardson*, 2005-Ohio-554, ¶27; *Flowers*, 909 F.2d at 147. A warrantless arrest is constitutionally valid if: "[a]t the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent

man in believing that the * * * [individual] had committed or was committing an offense." *State v. Heston*, 29 Ohio St.2d 152, 155–156, 280 N.E.2d 376(1972), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142(1964). "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 1661–1162(1996). A police officer may draw inferences based on his own experience in deciding whether probable cause exists. *See, e.g., United States v. Ortiz*, 422 U.S. 891, 897, 95 S.Ct. 2585, 2589(1975).

{¶43} In the case at bar, the initial contact with Granados is best placed into the third category. Upon review, under the totality of the circumstances, we conclude the events in the case sub judice constituted an arrest such that the officers were required to have probable cause to believe a crime had been committed and that Granados or the driver of the SUV committed it.

{¶44} In the case at bar, several police officers swarmed the SUV as it was idling in the driveway of the residence. The officers had drawn their weapons and were shouting at the occupants to "show us your hand." The occupants were placed on the ground, handcuffed and searched. No weapons or contraband was found on Granados' person or the person of the driver of the SUV during the initial search. Granados and the driver of the SUV were then placed inside separate police cruisers.

{¶45} In *United States v. Mendenhal*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497(1980), the United States Supreme Court made the following observation,

We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *See Terry v. Ohio, supra*, 392 U.S., at 19, n. 16, 88 S.Ct. at 1879, n. 16*; Dunaway v. New York*, 442 U.S. 200, 207, and n. 6, 99 S.Ct. 2248, 2253, 60 L.Ed.2d 824; 3 W. LaFave, Search and Seizure 53–55 (1978).

Id. at 544, 100 S.Ct. at 1877.

{¶46} A warrantless arrest is constitutionally valid if: "[a]t the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense." *State v. Heston*, 29 Ohio St.2d 152, 155–156, 280 N.E.2d 376(1972), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142(1964).

*B. The "tip"*

{¶47} In order to determine if the officers had probable cause to arrest Granados, we must determine whether the information conveyed to the officers by Wolfe and Marshall was sufficient to provide probable cause to arrest.

{¶48} The courts have recognized three categories of informants: (1) citizen informants; (2) known informants, i.e., those from the criminal world who have previously provided reliable tips; and (3) anonymous informants, who are comparatively unreliable. *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 720 N.E.2d 507, 1999-Ohio-68.

{¶49} Wolfe and Marshall do not neatly fit into any of these categories. They were not ordinary citizens reporting the drug activity out of their sense of civic duty. They had not provided information to the police in the past and they were not anonymous. Because they had made a deal with law enforcement to avoid prosecution, the pair is most analogous to that of a "cooperating defendant" who has not previously assisted law enforcement and therefore, has not provided reliable tips in the past. *State v. Allison*, 5th Dist. Stark No. 2004 CA 00279, 2005-Ohio-860 at ¶15. Accordingly, as less reliable informants, in order to provide a sufficient basis for an arrest, the cooperating defendants' information had to be corroborated by independent police investigation. Id.; *See also, McCray v. Illinois*, 386 U.S. 300, 304–5, 87 S.Ct. 1056, 1059, 18 L.Ed.2d 62(1967). This occurred in the case sub judice.

{¶50} "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable

cause." *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). A police officer may draw inferences based on his own experience in deciding whether probable cause exists. *See, e.g., United States v. Ortiz*, 422 U.S. 891, 897, 95 S.Ct. 2585, 2589, 45 L.Ed.2d 623(1975).

{¶51} In the case at bar, Wolfe told the officers the details of a planned drug sale. In the presence of officers, Wolfe arranged by phone for the delivery of one to two ounces of heroin to his home. According to Wolfe, two Hispanic men would make the delivery. Wolfe further related to the officers that the men would arrive at his home in a light colored SUV between 7:00 p.m. and 7:30 p.m. The men would remain inside the SUV in the driveway of Wolfe's residence waiting for Wolfe to make contact. These details were substantially corroborated by subsequent police observation.

{¶52} There can be no doubt, upon the basis of the circumstances related by the officers that there was probable cause to sustain the arrest and incidental search in this case. *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327(1959). Sergeant Hamler and Deputy Campbell testified at the hearing on Granados' motion to suppress and described with specificity what Wolfe and Marshall actually said to them about the details of the delivery of the heroin. The testimony of the officers informed the court of the underlying circumstances from which the officers concluded that the drugs were to be delivered, and some of the underlying circumstances from which the officers concluded that Wolfe and Marshall were "credible" or their information "reliable." *Unites State v. Gill,* 685 F.3d 606, 609-610(6th Cir. 2012); *United States v. Strickland*, 144 F.3d 412, 417(6th Cir. 1998); *State v. Skinner*, 5th Dist. Stark No. 2004-CA-00283, 2005-Ohio-4273, ¶34. Upon the basis of those circumstances, along with the officers'

personal experiences, "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the individuals in the SUV had committed or were committing an offense." *Brinegar v. United States*, 338 U.S. 160, 175, 176, 69 S.Ct. 1302, 1310, 1311, 93 L.Ed. 1879(1949); *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134(1959); *Beck v. Ohio* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142(1964). Wolfe and Marshall's information was surely validated when Granados appeared at the time and place that they said he would, driving the SUV they said he would and accompanied by a Hispanic male companion as they said he would. Consequently, there was probable cause for appellant's arrest. *State v. Graves*, 6th Dist. No. L–02–1053, 2003–Ohio–2359, ¶ 6; *State v. Skinner*, ¶35.

{¶53} We find the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that Granados, as a passenger in the SUV, had committed or was committing an offense.

C. *"Standing."*

{¶54} Granados next contends that the trial court incorrectly concluded that he lacked standing to challenge the search of the SUV.

{¶55} Only those whose rights were violated by the search itself can urge suppression of evidence obtained in violation of the Fourth Amendment. Standing is not achieved solely by a person's status as a defendant or by introduction of damaging evidence. *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176(1969). Consequently, before a court may review the reasonableness of police

behavior, the defendant must be able to demonstrate that his Fourth Amendment right to privacy was violated.

**{¶56}** In *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697(1960), the United States Supreme Court held that automatic standing applied to any person charged with an offense in which possession is an essential element, and that any person legitimately on the premises where a search takes place could challenge the lawfulness of the search.

**{¶57}** Automatic standing was eliminated in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387(1978). In *Rakas*, the defendants were passengers in an automobile that had been lawfully stopped on reasonable suspicion but unlawfully searched. The search uncovered a sawed-off rifle under the passenger seat and a box of shells in a locked glove box, which helped link the defendants to a robbery. The defendants never asserted a property interest in the evidence but claimed standing because of their lawful presence as passengers in the vehicle.

**{¶58}** The United States Supreme Court held that a court may not exclude evidence under the Fourth Amendment unless it finds that an unlawful search or seizure violated the defendant's own constitutional rights. *Rakas,* at 133–140, 99 S.Ct. 421, 58 L.Ed.2d 387. *See, also*, *Brown v. United States*, 411 U.S. 223, 229–230, 93 S.Ct. 1565, 1569–70, 36 L.Ed.2d 208 (1973); *Alderman v. United States*, 394 U.S. 165, 171–172, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969); *Simmons v. United States*, 390 U.S. 377, 389, 88 S.Ct. 967, 973, 19 L.Ed.2d 1247 (1968). A defendant's Fourth Amendment rights are violated only when the challenged conduct invaded his legitimate expectation of privacy rather than that of a third party. *Rakas v. Illinois*, 439 U.S., at 143, 149-152,

(Powell, J., concurring); *Combs v. United States*, 408 U.S. 224, 227, 92 S.Ct. 2284, 2286, 33 L.Ed.2d 308 (1972); *Mancusi v. DeForte*, 392 U.S. 364, 368, 88 S.Ct. 2120, 2123, 20 L.Ed.2d 1154 (1968).

{¶59} In contrast, a driver and his passengers have standing to challenge *the legality of a traffic stop*. *State v. Carter*, 69 Ohio St.3d 57, 63, 630 N.E.2d 355, 360(1994). The passengers' standing is premised upon the fact that all people within the stopped vehicle are equally seized and their freedom of movement equally detained. Id.; Therefore, Granados, as a passenger in the SUV, has standing to challenge the propriety of the initial stop. As we have previously discussed, the officers had probable cause to arrest Granados.

{¶60} To establish standing to challenge a search of the SUV or its contents, Granados, as a  passenger, must prove an interest in the vehicle, an interest in the properties seized, or some other reason to establish a legitimate expectation of privacy in the vehicle, *State v. Carter,* 69 Ohio St.3d 57, 1994–Ohio–343, 630 N.E.2d 355. It does not appear from the record he asserted a privacy interest in the vehicle or in the DAP caulk container. The SUV did not belong to Granados nor it there evidence that he was he was given permission to drive the SUV by the owner. Granados also asserted no property or possessory interest in any of the vehicle's contents. With no property or possessory interest in the vehicle or its contents, Granados had no legitimate expectation of privacy in them and thus no cognizable Fourth Amendment challenge to the officers' search. *Rakas v. Illinois* 439 U.S. 128, 148, 99 S.Ct. 421, 433, 58 L.Ed.2d 387, 404(1978); *see, also, State v. Otte*, 74 Ohio St.3d 555, 559, 660 N.E.2d 711, 717(1996).

{¶61} We find no error in the denial of the motion to suppress, as Granados did not have a reasonable expectation of privacy in the SUV or the container of caulk.

{¶62} Because we find the trial court correctly concluded that Granados did not have a reasonable expectation of privacy in the SUV or the container of caulk, we need not address the trial court's findings in the alternative. *Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371, 372 (1970)( It has become settled judicial responsibility for courts to refrain from giving opinions on abstract propositions and to avoid the imposition by judgment of premature declarations or advice upon potential controversies.)

{¶63} Based upon the above, we find the trial court properly overruled the motion to suppress. Granados' second assignment of error is overruled.

{¶64} For the foregoing reasons, the judgment of the Fairfield County Court of Common Pleas, Ohio, is affirmed.

By Gwin, P.J.,

Wise, J., and

Delaney, J., concur