[Cite as *State v. Olive*, 2026-Ohio-2150.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
FAIRFIELD COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO, | Case No. 2025 CA 00038 |
|    Plaintiff - Appellee | <u>Opinion & Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas of Fairfield County, Case No. 25 CR 083 |
| FREDERICK NOBLE OLIVE, | Judgment:  Affirmed |
|    Defendant - Appellant | Date of Judgment:  June 4, 2026 |

BEFORE: Craig R. Baldwin, Kevin W. Popham, and David M. Gormley, Judges

APPEARANCES: R. Kyle Witt (Fairfield County Prosecuting Attorney) and Sarah A. Hill (Assistant Prosecuting Attorney), Lancaster, Ohio, for Plaintiff-Appellee; Christopher C. Bazeley, Cincinnati, Ohio, for Defendant-Appellant.

*Gormley, J.*

**{¶1}** Defendant Frederick Olive argues in this appeal that the trial court should have granted his motion to suppress because, in his view, law-enforcement officers improperly carried out a warrantless search of a locked safe that was found in his vehicle during a traffic stop. We conclude that Olive, who told the arresting officer at the roadside that the safe was not his and that he did not know whose it was, gave up any right to challenge that warrantless search. For that reason, we affirm the trial court's decision denying Olive's suppression motion.

**The Key Facts**

**{¶2}** While on duty, Ohio State Highway Patrol (OSHP) trooper Tazz Ashbaugh received a radio report from a dispatcher about a motorist who was driving erratically nearby. The trooper drove in his cruiser to the area where the vehicle in question was reportedly traveling, and once he found a vehicle matching the dispatcher's description,

the trooper saw the vehicle's driver — Olive — commit multiple moving traffic offenses. The trooper then activated the cruiser's overhead flashing lights — and eventually his siren too — and Olive in turn moved his vehicle to the roadside and stopped there.

{¶3} Trooper Ashbaugh then parked his cruiser at the roadside and approached the passenger side of Olive's vehicle on foot. At a suppression hearing held in the trial court several months later, the trooper testified that he noticed at the roadside Olive's droopy eyelids and constricted pupils, his slow and lethargic movements, and the fact that Olive had not moved his gear shift or transmission selector from drive mode into the park position.

{¶4} Next, the trooper asked Olive to exit the vehicle and participate in some field-sobriety tests. After observing Olive's performance on those tests, Trooper Ashbaugh arrested Olive for operating his vehicle while under the influence of drugs or alcohol (OVI).

{¶5} Ashbaugh and another trooper who had arrived at the scene determined that Olive's vehicle needed to be towed in accordance with an OSHP policy because the vehicle was obstructing one lane of travel on the road. (Olive had been traveling alone that day, so no other licensed driver was with him who could move the vehicle, and Olive, when he parked at the roadside, had moved only the vehicle's right tires off the road, leaving the bulk of the vehicle jutting into the roadway.)

{¶6} When the troopers, before the tow truck had arrived, began conducting what Ashbaugh described at the suppression hearing as an inventory or administrative search of Olive's vehicle, they found a locked safe in the vehicle's center console. Trooper Ashbaugh testified that, under OSHP policy, closed containers found inside stopped

vehicles may be opened at the roadside so that the contents can be recorded by troopers conducting an inventory or administrative search.

{¶7} After finding the locked safe in Olive's vehicle at the roadside, Trooper Ashbaugh walked from that vehicle to the patrol car where Olive was seated and asked Olive for the combination to the safe, explaining that he planned to list the contents of the safe on an inventory sheet. Olive then told the trooper several times that the safe did not belong to him and that he did not know who the owner was. Olive, according to Ashbaugh's suppression-hearing testimony, said that the safe had been in the center console when Olive purchased that console and installed it in his vehicle. (The trooper's testimony about that and other statements by Olive at the roadside was corroborated by a video recording from the trooper's body-worn camera that was played for the trial judge at the suppression hearing.)

{¶8} After hearing Olive disclaim any ownership interest in the locked safe, Trooper Ashbaugh used some tools from his patrol car to open it at the roadside. Inside it, the trooper found a white crystalline substance as well as some suboxone strips, a scale, a spoon, and several small plastic bags. That discovery in turn led to the filing of an aggravated-possession-of-drugs charge against Olive.

{¶9} Olive's suppression motion in the trial court challenged the warrantless search of the safe. After the trial court denied that motion, Olive pled no contest to both the drug-possession charge and an OVI charge. He now appeals.

## Olive Lacks Any Standing to Challenge the Search of the Safe

{¶10} In his sole assignment of error, Olive urges us to find that the troopers should have sought and secured a search warrant before opening the locked safe. We are not persuaded.

*Standard of Review*

**{¶11}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8.  When a trial court considers a motion to suppress, it "assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*  As a reviewing court, we must accept as true the trial court's factual findings if they are supported by competent, credible evidence, and we must "then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

*Olive Had No Expectation of Privacy in the Safe*

**{¶12}** The Fourth Amendment of course protects individuals from unreasonable searches and seizures by the government.  *State v. Jackson*, 2004-Ohio-3206, ¶ 8.  A search conducted without a warrant is unreasonable unless an established exception to the Fourth Amendment's warrant requirement applies.  *State v. Nicholson*, 2017-Ohio-2825, ¶ 19 (5th Dist.).  Evidence obtained through government conduct that violates an individual's Fourth Amendment rights may not be used against him or her at trial.  *State v. Lemaster*, 2012-Ohio-971, ¶ 8 (4th Dist.).

**{¶13}** The suppression of evidence obtained in violation of the Fourth Amendment, however, "can be successfully urged only by those whose rights were violated by the search itself."  *Alderman v. United* States, 394 U.S. 165, 171-172 (1969). *See also State v. Granados*, 2014-Ohio-1758, ¶ 58 (5th Dist.) ("A defendant's Fourth Amendment rights are violated only when the challenged conduct invaded his legitimate expectation of privacy rather than that of a third party").

{¶14} Standing has been defined as a party's "'right to make a legal claim or seek judicial enforcement of a duty or right.'" *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 2007-Ohio-5024, ¶ 27, citing *Black's Law Dictionary* (8th Ed. 2004). In order to have standing to challenge a search under the Fourth Amendment, an individual "must have a reasonable expectation of privacy in the evidence seized." *Jackson* at ¶ 8. A legitimate expectation of privacy arises when an individual has exhibited an actual expectation of privacy that society is prepared to recognize as reasonable. *United States v. Tolbert*, 692 F.2d 1041, 1044 (6th Cir. 1982).

{¶15} A defendant does not have standing to assert a Fourth Amendment challenge to the search of property that the defendant has voluntarily abandoned. *State v. Freeman*, 64 Ohio St.2d 291 (1980), paragraph two of the syllabus. *See also State v. Gould*, 2012-Ohio-71, ¶ 20 ("the Fourth Amendment prohibition against unreasonable searches does not apply to property that has been voluntarily abandoned, because society does not recognize an expectation of privacy in abandoned property as being objectively reasonable").

{¶16} Yet a defendant may have standing to challenge the search of property if he or she abandoned the property involuntarily "in response to illegal police conduct." *State v. Cosby*, 2008-Ohio-3862, ¶ 32 (2d Dist.). The existence of a police investigation, though, does not in itself render abandonment involuntary. *Freeman* at 297.

{¶17} "Abandonment" of property in the context of the Fourth Amendment is a question of intent, and an individual's intent may be inferred from his or her words, actions, or other objective facts. *State v. Martin*, 2019-Ohio-2792, ¶ 16 (12th Dist.). The central issue is whether the person who was prejudiced by the search "had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question"

in such a way that he or she "could no longer retain a reasonable expectation of privacy" in the item at the time of the search. *Freeman* at 297. Whether property has been abandoned should not be determined based on the owner's subjective intent but should instead be premised on the objective facts that are available to the investigating officer. *State v. Camper*, 2023-Ohio-4673, ¶ 26 (10th Dist.).

{¶18} State and federal appellate courts in Ohio have consistently agreed that an individual lacks standing to later raise a Fourth-Amendment claim when he or she, before the search, disavowed any possessory interest in the property in question. *See, e.g., Martin* at ¶ 17 ("when a person denies ownership in property there is no longer an expectation of privacy in the disclaimed property"); *State v. Conner*, 2005-Ohio-1971, ¶ 66 (8th Dist.) ("Conner had no standing to challenge the search of bags that he has maintained were not his"); *State v. Carter*, 2004-Ohio-1181, ¶ 31 (11th Dist.) ("A person who denies ownership of an item does not possess an expectation of privacy in the item to which he or she disclaimed ownership"); *United States v. Peters*, 194 F.3d 692, 696 (6th Cir. 1999) ("Defendant vigorously denied that the black attaché case was owned by him or put on the bus by him, and thus he has no interest in preserving the secrecy of the contents of the bag and has no legitimate expectation of privacy, which would confer standing").

{¶19} Here, Trooper Ashbaugh testified at the suppression hearing that he had asked Olive for the combination to the safe so that the troopers at the scene could open it and catalog its contents as part of their roadside inventory search. In response to that inquiry, Olive said that the safe did not belong to him and that it had been inside the center console when Olive purchased that console as an aftermarket addition to the vehicle. According to Olive's roadside explanation, he had simply left the locked safe in

the new console and had no idea whose it was. When Ashbaugh, during the roadside encounter, questioned Olive about the logic of that claim, Olive continued to assert that it was not his safe and that he did not know who it belonged to. Olive can be heard disclaiming ownership of the safe numerous times in the video footage from the trooper's body-worn camera.

{¶20} Olive challenges on appeal only the warrantless search of the locked safe itself. And Olive, in response to the state's assertion that Olive lacks standing to challenge the search, does not claim that any illegal police conduct compelled him to disavow ownership of the safe.

{¶21} Instead, Olive points to *State v. Carter*, 69 Ohio St.3d 57 (1994), and argues that he enjoys automatic standing to challenge the search because (1) he was charged with a crime for which "possession" is an essential element, and (2) he was legitimately on the premises where the search occurred. The language from *Carter* that he cites, though, appears as part of the court's summary of past rulings addressing the Fourth-Amendment rights of vehicle passengers, and that language is immediately followed by the words "[a]utomatic standing was eliminated" in *Rakas v. Illinois*, 439 U.S. 128 (1978). *Carter* at 62. The *Carter* decision says nothing further about automatic standing, and that ruling certainly cannot accurately be described as embracing such a concept.

{¶22} We conclude that Olive lacks standing to raise a Fourth-Amendment challenge to the search of the safe. He simply had no expectation of privacy in that item after repeatedly denying that it was his. *See Tolbert*, 692 F.2d at 1045 ("Tolbert can hardly assert that she 'exhibited an actual (subjective) expectation of privacy' respecting the luggage when she specifically disclaimed ownership thereof"); *State v. Thompson*, 2025-Ohio-3262, ¶ 21 (9th Dist.) ("an individual must have a reasonable expectation of privacy

in an item to have standing to raise a Fourth Amendment challenge . . . Mr. Thompson could only seek suppression of the evidence uncovered in the bookbag if he admitted a possessory interest in it").

**{¶23}** The trial court properly denied Olive's motion to suppress, and Olive's assignment of error is overruled.

**{¶24}** The judgment of the Court of Common Pleas of Fairfield County is affirmed. Costs are to be paid by Appellant Frederick Olive.

By: Gormley, J.;

Baldwin, P.J. and

Popham, J. concur.